United States District Court
Southern District of Texas
FILED

DEC 1 3 2000

Michael N. Milby
Clerk of Court

Criminal Case No. B-96-314-04

In the

**B-00-188**

UNITED STATES DISTRICT COURT

for the SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

UNITED STATES OF AMERICA,

Plaintiff-Respondent,

-v-

JAVIER MORALES,

Defendant-Petitioner.

ON COLLATERAL ATTACK PURSUANT TO
[28 U.S.C. § 2255]

MEMORANDUM IN SUPPORT OF
28 U.S.C. § 2255 MOTION

JAVIER MORALES   PRO SE
ID# 73464-079
FPC-UVALDE UNIT
P.O. BOX 4300
THREE RIVERS, TEXAS 78071

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES OF AMERICA,     §
                              §
     Plaintiff-Respondent,    §
                              §
vs.                           §     Criminal Case No. B-96-314-04
                              §
JAVIER MORALES,               §
                              §
     Defendant-Petitioner.    §


MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO TITLE 28 U.S.C. § 2255

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW JAVIER MORALES, your Petitioner, herein, who respectfully moves this Honorable Court in this his motion to vacate under 28 U.S.C. § 2255 with brief in support. The undersigned comes before the court without counsel. In support thereof, the undersigned would show unto the Court as follows:


JURISDICTIONAL STATEMENT

Jurisdiction is invoked upon this Honorable Court pursuant to Title 28 U.S.C. § 2255. Petitioner asserts that his conviction and sentence were imposed in violation of his Fifth and Sixth Amendments to the United States Constitution. The district court has proper subject matter jurisdiction over the instant case. Based on the recent Supreme Court ruling in **Apprendi v.New Jersey**, petitioner's sentence under § 841 applied to the enhanced penalties of the drug statutes vesting this court with jurisdiction.

-1-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES OF AMERICA,      §
                               §
     Plaintiff-Respondent,      §
                               §
vs.                            §      Criminal Case No. B-96-314-04
                               §
JAVIER MORALES,                §
                               §
     Defendant-Petitioner.      §

## MEMORANDUM OF LAW

Petitioner respectfully submits that the events which transpired in this case constitute a denial of petitioner's Due Process rights, as guaranteed by the Fifth and Sixth Amendments to the United States Constitution. Petitioner's rights guaranteed by the Sixth Amendment, Equal Protection of the Laws. In short, petitioner submits that his conviction and sentence be vacated as he received ineffective assistance of counsel during the sentencing stages. Counsel failed to argue the (3) level upward adjustment for petitioner's role in the offense as an organizer, where the record shows his involvement was minor, instead of an organizer. Also, counsel failed to argue that the PSR and the sentencing court were inconsistent in their findings as to the total amount of drugs reasonable foreseeable to petitioner. The element of (3) levels for being an organizer was not alleged in the indictment, submitted to the jury, and proven beyond a reasonable doubt. At sentencing, counsel failed to argue that drug quantity was an element of the offense that should have been alleged in the indictment.

-2-

As the three-level enhancement had not been alleged in the indictment, petitioner contends, his sentence could not be statutorily enhanced. (citing **Jones v. United States, 119 S.Ct. 1215 (1999)).** The straightforward resolution of this issue is that based on Jones, this Court should revisit the issue whether petitioner was subject to an enhanced sentence. Petitioner was denied the right of having an element of the offense charged, submitted to the jury, and proven beyond a reasonable doubt.

Moreover, the indictment was defective and the district court committed reversible error because the jury must find that element existed. Even assuming arguendo, that a controlled substance——marijuana was involved in the offense of conviction, petitioner's sentence cannot stand because the Government failed to allege or prove the element of an organizer in the offense. Enhancements based on conduct that has been criminalized by statue and the facts used to increase the penalty beyond the maximum Guideline range is a crime under another statute which like in Apprendi were not tried by the jury and found true beyond a reasonable doubt. In these cases, the defendant was found guilty of one crime carrying a maximum penalty defined by the Guidelines and then punished over the maximum for a different crime criminalized by a different statute identical to Apprendi.

Apprendi's legal basis and reasoning make it abundantly clear that the unconstitutionality of the punishment arises from the imposition of punishment for conduct not tried to the jury regardless of the fact that Congress has chosen to criminalize it or not.

-3-

In the alternative, petitioner requests that the sentence in the case at bar, be vacated due to the errors committed by counsel fell outside the range of professionally acceptable performance. His failures to argue petitioner's role in the offense and his relevant conduct denied him effective representation. A violation of his Fifth and Sixth Amendments to the United States Constitution. The criminal defendant is entitled under the Due Process Clause to notice of what is criminally forbidden and the penalties that attach to the conduct. The deprivation of liberty and the absence of said required constitutional notice would subject any such procedure to fatal constitutional challenges which were not available under the sentencing umbrella removed by <u>Apprendi</u>, which makes no distinction between criminal or non-criminal conduct.

It merely punishes for any increased punishment beyond the statutory maximum unless the facts which form the basis of the punishment were found true by a jury beyond a reasonable doubt. Further, such failings are not merely procedural, but substantially infringed upon petitioner's constitutional right to due process of law under the Fifth Amendment.

-4-

## STATEMENT OF ISSUE UNDER CONSIDERATION

Petitioner respectfully requests that this Court adjudicate the following issues of law to wit:

I.   Whether petitioner's guilty plea was involuntary, unintelligently, unknowingly, and therefore, in violation of due process based on counsel's erroneous advice.

II.  Whether the district court erred when it assessed petitioner with a base offense level of 34 where petitioner's culpability and relevant conduct should have been limited to the scope of the offense; and whether counsel was ineffective for failing to accurately and adequately perfect the relevant conduct issue in that the PSR and court were inconsistent in their findings.

III. Whether the district court erred in sentencing petitioner by assessing him with a three-point upward adjustment for his role in the offense as an organizer or leader in the conspiracy under § 3B1.1.

IV.  Whether the indictment was defective in that it did not properly state the statutory language that relates to § 841(a)(1) & § 841(b)(1)(A); and whether the district court erred in sentencing petitioner at the base offense level of 34 because the indictment never alleged and the jury never made a finding of the amount of marijuana involved as required by Apprendi v. New Jersey.

V.   Whether the three-level upward adjustment for petitioner's role in the offense as an organizer should be dismissed under Apprendi because of the Government's failure to allege the (three-levels of an organizer) in the indictment.

## STATEMENT OF THE CASE

On November 5, 1996, a Federal Grand Jury at Brownsville, Texas, returned a four-count indictment against Orlando Garza, also known as "Lar"; Daniel Bazan, also known as "CONO"; David Bazan; **Javier Morales**; Jorge Luis Garza; Ascencion Garza; Juan Manuel Garza; Jose Oscar Ramirez, Jr.; Eddie Joe Solis; Manuel Orlando Ramirez, Jr.1 Joel Morales, Jr.;

-5-

CEMPDF - www.lexis.com

John Frederick Moore; Roel Saenz, Jr.; Braulio Ramirez, also known as "BIG FOOT"; also known as "LALI"; Efrain Rocha, also known as "PANCHO"; Agapito Silguero, Jr; Odell Dimas, Leonel Ramirez, also known as "BOY"; Elmo Heriberto Martinez, also known as "LA PETRA"; Efrain Guiterrez; and Eden Alan Martinez. The Counts listed in the indictment are as follows:

Count One: Conspiracy to possess, with intent to distribute a quantity exceeding 1,000 kilograms of marihuana, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). Count Two: Possessing, with intent to distribute, a quantity exceeding 100 kilograms, that is, approximately 114.10 kilograms of marihuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. Count Three: Possessing, with intent to distribute, a quantity less than 50 kilograms, that is, approximately 30.45 kilograms of marihuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D) and 18 U.S.C. § 2. Count Four: Possessing, with intent to distribute, a quantity exceeding 100 kilograms, that is, approximately 122.27 kilograms of marihuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2.

On January 2, 1997, Javier Morales entered a plea of guilty to Count 1 of the Indictment. The oral plea agreement recommended dismissal of Counts 3 and 4 at the time of sentencing.

## STATEMENT OF THE FACTS

The following information is derived from petitioner's PSR ¶¶ 38-81, pps. 7-15. As a result of an independent investigation conducted by Senior U.S. Probation Officer Lina Wise Marin, the following information was gathered regarding the defendants's conduct in the instant offense. On May 8, 1993, Drug Enforcement Agency (DEA) Task Force Officer received information from the Texas Department of Public Safety that Javier Morales and Jorge Luis Garza were planning to transport marihuana from Roma, Texas, to Hebbronville, Texas, in a blue and white pickup. Surveillance was established on Highway 16 and FM Road 3073 located South of Hebbronville. The driver of the Chevrolet pickup was identified as Javier Morales. The pickup trucks were stopped and marihuana residue in the amount of less than two (2) ounces was found inside the blue and white pickup truck tool box.

On May 10, 1993, Jorge Luis Garza was interviewed and he stated that on May 5, 1993, Manuel Guerra made arrangements with Javier Morales and himself to transport marihuana from Roma to Hebbronville, Texas. On September 11, 1995, Arnoldo Belmontes was sentenced to (9) years imprisonment. On September 13, 1996, Belmontes was interviewed at the U.S. Marshals Office in Brownsville in reference to his involvement in transporting marihuana with Lar Garza of Hebbronville, Texas. Belmontes stated that he and Javier Bustamante traveled to Hebbronville to Alberto Cipple's residence to ask him if he knew people interested in transporting marihuana. Cipple introduced Bustamante to Juan Perez where he also met Lar Garza.

-7-

Bustamante negotiated with Juan Perez and Lar Garza who agreed to transport 200 to 250 pounds of marihauana. Belmontes and Lar Garza continued working together. In August 1993, Belmontes resumed marihuana trafficking negotiations with Lar Garza. A total of 13,000 pounds of marihuana that belonged to Belmontes was transported by Lar Garza. Manuel Guerra stated that on ten different occasions he picked up marihuana loads weighing 400 to 500 pounds from the residence belonging to Daniel Bazan. According to Guerra, he transported a total of 22 loads of marihuana that weighed 400 pounds each for a total of 8,900 pounds. This marihuana belonged to the Bazan brothers who contacted the services of the Lar Garza organization.

On May 11, 1993, Garza was interviewed by Task Force Agents at the Jim Hogg County Sheriff's Department. He revealed that he agreed to move 150 to 200 pounds of marihauana three times a month. He admitted to having participated in the transporting of (12) loads of marihuana which occurred during a year's time. He also revealed that Javier Morales was involved. He also stated that Jorge Garza recruited other men who also became involved in the transporting of marihuana conspiracy. He implicated several other individuals who were hired to hand carry (hereinafter described as "walk") the marihuana from south of the checkpoint to Hebbronville, thereby circumventing the checkpoint. Pursuant to ¶ 63, page 11, the PSR states that Javier Morales worked under the direction of Lar Garza. The PSR stipulates it believes that Morales was a manager or supervisor of the criminal activity that involved 8,800 pounds of marihuana.

-8-

## ARGUMENT & AUTHORITIES
## GROUND ONE

**DEFENSE COUNSEL WAS INEFFECTIVE WHEN HE ERRONEOUSLY ADVISED PETITIONER TO PLEAD GUILTY, THEREFORE, PETITIONER'S GUILTY PLEA WAS UNKNOWINGLY, UNINTELLIGENTLY, AND INVOLUNTARY.**

Petitioner contends, the entry of his guilty plea was involuntary because the district court led him believe that he was guilty of the charge in the indictment based on an insufficient **mens rea,** petitioner's guilty plea was involuntary——in violation of the Due Process Clause of the Fifth Amendment as well as in violation of Federal Rule of Criminal Procedure 11(c)(1).  see **Henderson v. United States,** 426 U.S. at 645; see also, **Bousley v. United States,** 523 U.S. 614, 618-19 (1998) (a defendant's guilty plea is "constitutionally invalid" when the district court "misinformed [the defendant] as to the elements" of the charged offense); **McCarthy v. United States,** 394 U.S. 459, 466 (1969) ("[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses a[] [correct] understanding of the law in relation to the facts."; **United States v. Suarez,** 155 F.3d 521, 524 (5th Cir.1998) (citing **United States v. Punch,** 709 F.2d 889, 894 n.7 (5th Cir.1983)).

The only remaining issue is whether the district court's error was harmless.  This Court previously has subjected a similar claim to harmless error analysis under Federal Rule of Criminal Procedure 11(h).  <u>Suarez,</u> 155 F.3d at 525.  However, because the district court's error rendered petitioner's guilty plea involuntary "in a constitutional sense," this Court instead,

-9-

must determine whether the error was "harmless beyond a reasonable doubt." Henderson, 426 U.S. at 644-47; see also Keel v. United States, 585 F.2d 110, 116 n.13 (5th Cir.1978) (en banc) (Rubin, J., concurring, joined by Clark & Tjoflat, JJ) ("Obviously, if the Rule 11 transgression is so serious as to amount to a deprivation of a constitutional right, the Chapman [v. California, 386 U.S. 18 (1967)] test would be applicable").

In applying the constitutional harmless—error standard to a constitutional claim that a defendant's guilty plea was involuntary, the Supreme Court has made two things clear: (1) the fact that a defendant "would have pleaded anyway," if the district court had correctly explained the nature of the charge, is irrelevant, Henderson, 426 U.S. at 644 n.12; and (2) the fact, "that the prosecutor had overwhelming evidence of guilt available" is also irrelevant, Henderson, 426 U.S. at 644-45.[1]/

In Henderson, the Court reasoned, that the only relevant question in conducting a harmless-error analysis is whether it can be determined "beyond a reasonable doubt" that a defendant possessed correct knowledge about the nature of the charge, notwithstanding the district court's erroneous statements at a guilty plea colloquy. Henderson, 426 U.S. at 647.

---

[1]/ The harmless-error test for constitutional Rule 11 violations markedly from the harmless-error test for non-constitutional Rule 11 violations set-forth by this Court in Johnson, 1 F.3d at 298 (in which an appellate court asks whether the defendant would have pleaded guilty had the district court not violated Rule 11).

CVisPDF - www.traviz.com

In the instant case, at the time that petitioner pleaded guilty, he obviously could not have been aware of Apprendi's future impact on the elements of § 841. Like the defendant in Henderson v. Morgan, 426 U.S. 637, 644-46 (1976), this Court held, that where neither the indictment, defense counsel, nor the trial court explained to the defendant, that intent to kill was an element of second degree murder, his plea to that offense was involuntary. The same rationale applied in Henderson should be applied to the case at bar. In this case, neither the three-levels for manager or supervisor were alleged in the indictment, defense counsel; nor the trial court explained to the petitioner that drug quantity was an element of the offense set forth in § 841, or that the (3) level enhancement had to be alleged in the indictment.

Therefore, the Court explained, a plea, cannot be voluntary in the sense that it constitute[s] an intelligent admission that he committed the offense unless the defendant receive[s] 'real notice of the true nature of the charge against him, the first and foremost universally recognized requirement of due process.' Id. at 645. It is well-established that, "when this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." Rivers v. Roadway Express, Inc., 511 U.S. 298, 313 n.12 (1994).

The Court has never held, that the constitutionality of a guilty plea cannot be attacked collaterally unless it is first challenged on direct review. Moreover, as the facts of this case demonstrate, such a holding would be unwise and would defeat

-11-

the very purpose of collateral review.  A layman who justifiably
relied on incorrect advice from the court and counsel in deciding
to plead guilty to a crime that he did not commit will ordinarily
continue to assume that such advice was accurate during the time
for taking an appeal.  The injustice of his conviction is not
mitigated by the passage of time.  His plea should be treated as
a nullity and the conviction based on such a plea should be voided.
Opinion of Justice Stevens, <u>Bousley v. United States</u>, No. 96-8516.

Because the record in this case already unambiguously
demonstrates that petitioner's plea to the charges of relevant
conduct (12,000) pounds of marihuana; and the three-level
enhancement for petitioner's role in the offense were not alleged
in the indictment; therefore, it is impossible for the Government
to show beyond a reasonable doubt that petitioner possessed a
correct understanding of the true nature of the charges at the
time of his guilty plea.  This Court must vacate his plea and
remand for repleading to only (5,400) pounds of marihuana, which
were reasonable foreseeable to the petitioner's relevant conduct.

## ARGUMENT & AUTHORITIES
## GROUND TWO

**THE DISTRICT COURT COURT ERRED IN SENTENCING PETITIONER TO AN ELEVATED OFFENSE LEVEL OF 34 WHERE THE PSR INCORRECTLY APPLIES THE RELEVANT CONDUCT LAW BY ALLEGING THAT PETITIONER SHOULD BE RESPONSIBLE FOR (8,000) POUNDS OF MARIHUANA ILLUSTRATED ON ¶ 65, PAGE 11, ¶ 88, PAGE 16 IS INCOMPLETE AND INAPPLICABLE IN THIS CASE.   DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO ACCURATELY AND ADEQUATELY PERFECT THE RELEVANT CONDUCT ISSUE IN THAT THE PSR AND COURT WERE INCONSISTENT IN THEIR FINDINGS.**

The guidelines commission has released a policy statement that would allow evidence that would not be admissible under the Federal Rules of Evidence (FRE) to be considered as long as the information has an indicia of reliability.   It would seem that the situation in which this type of evidence should be allowed would be under extraordinary circumstances.   The Federal Rules of Evidence are designed to allow any relevant, reliable evidence to be considered while systematically disallowing that evidence which is inherently unreliable.   For this reason, any evidence allowed that is outside the bounds of the (FRE) should be suspect and have the sufficient indicia of reliability to support its probable accuracy.

In the present case all the information attempting to connect the petitioner to any relevant conduct (5,400) pounds of marihuana is based on hearsay, speculation and innuendo not likely to be admitted under the (FRE).   The evidence of the existence of these loads is marginally reliable for this reason, and more so if you consider its source.   The information comes from an informant, from co-defendants who have admitted transporting and assisting and arranging logistics in several drug  trafficking organizations.

-13-

It was co-defendants and a co-defendant who is alleged in the PSR to be the head of an organization "whose major focus involved the transportation of marijuana throughout Texas, for other drug trafficking organizations." Even if you accept a relationship between the loads that Morales and Garza, there is insufficient evidence to prove that petitioner was involved in the distribution of more than (5,400) pounds of marihuana as alleged in ¶ 60, page 10, where Garza agreed to transport 150-200 pounds of marihuana three (3) times a month. Garza further admitted to have participated in transporting (12) loads of marihuana which occurred during a year's time, where petitioner was involved. Yet, when the marihuana alleged by Garza comes to a total of 5,400 pounds, there is strong evidence that the method of calculating amounts of contraband by the probation officer is based on a faulty premise and a worthless calculation.

This information alleged by the PSR, case agents is based on weak testimony, hearsay statements and loose assumptions. The PSR incorrectly applies the Relevant Conduct law by alleging that the petitioner should be responsible for 12,000 pounds is similarly misplaced. Relevant Conduct reads:

(1)(A) all acts and omissions committed, aided abetted, counseled, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

<u>that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;</u>

-14-

The above underlined section is taken from the sentencing law and is omitted from the presentence report. The PSR attempts to tie the petitioner in with other shipments of marihuana and use this information as relevant conduct. The relevant conduct law is clear as provided above. Even if all the probation department allegations are taken as true, which are not, the section of the law they are attempting to use does not apply in this situation. The allegations of relevant conduct made by the probation department did not take place during the commission of petitioner's involvement in offense of conviction, nor in preparation for that offense, nor in the course of attempting to avoid detection or responsibility for that offense as required by law. All the allegations and information supplied by co-defendants that allegedly tied to the petitioner, Javier Morales, does not apply as relevant conduct under U.S.S.G. § 1B1.3(a)(1)(A) and (B).

The sentencing court erred in sentencing petitioner at an elevated offense level. Counsel allowed the court to make a finding of relevant conduct that was not warranted by the evidence. The amount of drugs for which an individual shall be held accountable at sentencing represents a factual finding, and will be upheld unless clearly erroneous. **United States v. Ponce**, **917 F.2d 841, 842 (5th Cir.1990)**. Challenges to factual findings under the guidelines are reviewed for clear error. **United States v. Mackey**, 33 F.3d 489 496 (5th Cir.1994). A factual finding is not clearly erroneous if it is plausible in light of the record as a whole. **United States v. Perez-Infante**, 19 F.3d 929 (5th Cir.) **(1994)**.

-15-

For a sentencing court to attribute a defendant a certain quantity of drugs, the court must make two separate findings: (1) the quantity of drugs in the entire conspiracy; and (2) the amount which each defendant knew or should have known was involved in the conspiracy and reasonably foreseeability does not follow automatically from proof that, the defendant was a member of the conspiracy. **United States v. Puma**, 937 F.2d 1325 (5th Cir.1991).

The court found as relevant conduct the amount of 8,800 pounds of marihuana. Petitioner's counsel should have challenged the district court and probation officer's calculations pursuant to the relevant conduct issue. Petitioner was prejudiced by counsel's inaction. In the instant case, the district court's calculation of the amount of drugs involved for purposes of sentencing must be reviewed for clear error. **United States v. Leal**, 74 F.3d 600, 607 (5th Cir.1996) (noting that only a preponderance of the evidence must support the district court's determination.

Like the defendant in Miele, this court must view the out-of-court statements submitted by Garza and others with caution and scrutinize it with care in determining whether it meets the **"sufficient indicia of reliability"** standard, set-out in U.S.S.G. § 6A1.3. The Gonzalez court held that, the pressure put on a co-conspirator who had been convicted and granted immunity from further prosecution, to testify before a Grand Jury, that implicated the defendant, made the **giving of the testimony in the co-conspirator's interest and therefore, not a statement against interest.** United States v. Gonzalez, 559 F.2d 1271, 1273 (5th Cir.1977).

-16-

Finally, petitioner wanted to be sentenced fairly, based upon accurate information. This is the sole reason he objects to the drug quantity. Exercising this right is not an attempt to minimize his involvement. The United States Supreme Court has made clear that there is a due process right to be sentenced on the basis of accurate information. **United States v. Tucker**, **404 U.S. 443 (1972)**. Generally, to show a due process violation, a defendant/petitioner, must only "raise a grave doubt as to the veracity of the [contested] information and show that the court relied on the false information in determining the sentence." **United States v. Eshweiler**, 782 F.2d 1385, 1387 (7th Cir.1986); **United States v. Stevens**, 851 F.2d 140, 143 (6th Cir.1988).

Thus, the crux of petitioner's argument, is that his sentence was based on unreliable evidence of drug quantity. If the probation officer and district court had calculated the drug amounts which were reasonable foreseeable to the petitioner it would have sentenced petitioner to a level 32, instead of level of 34. As such, the record belies the probation officer's assertions in the PSR and the district court failed to make a findings of fact and conclusions of law pursuant to petitioner's relevant conduct. At best, had counsel argued and objected that petitioner was only responsible for (5,400) pounds of marihuana there is a reasonable probability that petitioner would have been sentenced at an offense level of 32 with a sentencing range of 121-151 months. This court must remand the instant case for resentencing.

-17-

## ARGUMENT & AUTHORITIES
## GROUND THREE

**THE DISTRICT COURT ERRED IN SENTENCING PETITIONER TO A THREE-LEVEL UPWARD ADJUSTMENT FOR HIS ROLE IN THE OFFENSE; UNDER APPRENDI THE (3) LEVEL UPWARD ADJUSTMENT SHOULD BE DISMISSED BECAUSE OF THE GOVERNMENT'S FAILURE TO ALLEGE THE CHARGE IN THE INDICTMENT; AND WHETHER THE INDICTMENT WAS DEFECTIVE IN THAT IT DID NOT PROPERLY STATE THE STATUTORY LANGUAGE THAT RELATES TO § 841(a)(1) & (b)(1)(A).**

First, the petitioner would contend that he was never found by the Grand Jury to be a manager or supervisor of a criminal enterprise as alleged by the PSR. The facts of this case and the averments contained in this brief support the proposition that petitioner's indictment is defective because of the Government's failure to allege the offense of a manager in the indictment. Petitioner received an enhanced sentence and under the Supreme Court's recent decision in Apprendi v. New Jersey the issue of § 3B1.1, acting as a manager or supervisor in a criminal activity was required to have been submitted in the indictment and charged to the jury.

The indictment did not include the three-level enhancement that was included during sentencing. The government failed to file a separate notice advising him that it intended to seek an enhancement of his sentence, if convicted as a manager or supervisor of the criminal activity. At sentencing, counsel failed to argue and object that the three-level enhancement was improper because it was not alleged in the indictment. Counsel failed to file objections to the probation officer's assertions. Further, counsel failed to argue and object that the three-level enhancement should have been charged as an element, rather than a sentencing enhancement.

The question before this court is whether Congress intended the statutory references to particular drug cases to define a separate crime or simply to authorize an enhanced penalty.  If the former, the indictment must identify the notice of enhanced penalty,  **"and"**  a jury must find that element proved beyond a reasonable doubt.  If the latter, the matter need not be tried before a jury, but may be left for the sentencing judge to decide. As petitioner notes, the Court's decision in <u>Jones</u> concluded, in a similar situation, that treating facts that lead to an increase in the maximum sentence as a sentencing factor would give rise to significant constitutional questions.  See <u>Jones</u> supra at 239-252.

The Supreme Court determined that the indictment must plead to specific statutory language in each of the charges filed against the defendant.  As such, there is specific language in each statute that must be identified to put a defendant on proper notice of what constitutes the charge of the grand jury. Petitioner asserts that the indictment is  "fatally defective for failing to allege and/or plead to specific statutory language in each of the charges filed against the petitioner."  Restated the indictment fails to allege an essential element of the felony offense proscribed by § 841(a)(1).

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that the indictment  "be plain, concise and definite written statement of the essential facts constituting the offense charged."  In <u>Russell</u>, the benchmark case involving the sufficiency

-19-

of an indictment, the Supreme Court noted that the first criterion
for measuring the adequacy of an indictment is "whether the
indictment 'contains the elements of the offense intended to be
charged.'" **Russell v. United States**, 369 U.S. 749, 82 S.Ct. 1038
8 L.Ed.2d 240 (1962).  Id at 763, 82 S.Ct. at 1046.

Petitioner next asserts that, "[i]mplied, necessary elements
not present in the statutory language, must be included in an
indictment." **United States v. Jackson**, 72 F.3d 1370, 1380
**(9th Cir.1995).**  In this case, the indictment fails to allege
the three-level enhancement for petitioner's role in the offense.
To be sufficient an indictment must allege each material element
of the offense; if it does not, it fails to charge that offense.
**United States v. Gaytan**, 74 F.3d 545, 552 (5th Cir.1996).  This
requirement stems directly from one of the central purposes of
an indictment; to ensure that the grand jury finds probable
cause that the defendant has committed each element of the offense,
hence justifying a trial, as required by the Fifth Amendment.
**United States v. Wilson**, 884 F.2d 174 (5th Cir.1989).

In the case at bar, because of the omissions by the Government
whether to include the three-level enhancement in the indictment,
it fails to charge an offense, leaving the district court without
jurisdiction to sentence petitioner to an elevated offense level
of three-points for petitioner's role in the offense as a manager
or supervisor of a criminal activity.  This is so because
enhancements based on conduct that has been criminalized by
statute for which Guidelines have been established must be
challenged under Apprendi.

-20--

The facts used to increase the penalty beyond the maximum
Guideline range is a crime under another statute which like in
Apprendi were not tried by the jury and found true beyond a
reasonable doubt.  In the instant case, petitioner was found
guilty of one crime carrying a maximum penalty defined by the
Guidelines and then punished over the maximum for a different
crime criminalized by a different statute identical to Apprendi.
This invalidates petitioner's sentence.

A case which sheds life to the case at bar, is **United States
v. R.L.C.**, 117 L.Ed.2d 559 (1992), **which provides the answer.**
The defendant in R.L.C. was sentenced to the maximum of three
years as provided by the statute criminalizing his conduct, but
a subsequent law provided that he had to be sentenced under the
Federal Sentencing Guidelines because he was triable as an adult.
The maximum range under the Guidelines was 21 months.  The question
presented was which of those two was the  "maximum"  provided
by statute since they were themselves a product of statute which
superseded the statute originally criminalizing the conduct.
The same rationale applied to R.L.C. must be applied to the instant
case.  Although, petitioner's offense increases is different than
the type of increases criminalized by statute like Apprendi, the
absence of the statutory basis criminalizing in the conduct should
make little difference under Apprendi and the case at bar, but are
so categorized herein for analytical purposes only.  Apprendi's
legal basis and reasoning make it abundantly clear that the
unconstitutionality of the punishment arises from the imposition

of punishment for conduct not tried to the jury regardless of
the fact that Congress has chosen to criminalize it or not.

These increases include sentence adjustments frequently
applied to drug cases in three levels raising from two to four
level increase points.  U.S.S.G. § 3B1.1.  This type of conduct
is substantially similar to one of the elements of the Continuing
Criminal Enterprise statute requiring the participation and
leadership of five people.  21 U.S.C. § 848.  The basic
difference between § 848 and § 3B1.1 is that the former required
a jury finding before _Apprendi_; and the latter did not not.
_Apprendi_ now requires a jury fingding for both.

Moreover, a criminal defendant is entitled under the Due
Process Clause to notice of what is criminally forbidden and
the penalties that attach to the conduct.  The deprivation of
liberty and the absence of said required constitutional notice
would subject any such procedure to fatal constitutional challenges
which were not available under the sentencing umbrella removed
by _Apprendi_, which makes no distinction between criminal or non-
criminal conduct.  It merely bars punishment for any increased
punishment beyond the statutory maximum unless the facts which
form the basis of the punishment were found true by a jury
beyond a reasonable doubt.  The challenges in this category are
numerous.

As argued more fully in part, _infra_, petitioner's sentence
cannot stand because the  Government failed to allege or prove
the element of the three-level enhancement.  Due to this failure

-22-

CM/PDF - www.fwsio.com

of proof as to an essential element of the indictment, petitioner's sentence must be vacated and those charges dismissed.  To conclude otherwise would violate petitioner's Due Process rights. See U.S. Const.amend. V.  Even assuming that a controlled substance was involved in the case at bar, the Government's failure to allege an element of the offense in the indictment supports petitioner's argument that the three-level enhancement for being a manager or supervisor in the criminal activity is an element of the offense and must be alleged in the indictment, charged to the jury, and proved beyond a reasonable doubt.

Finally, the Fifth Amendment protect a defendant against being tried on a charge not contained in a grand jury indictment. This right is violated when the district court constructively amends the indictment by  "allow[ing] proof of an essential element of a crime on an alternative basis permitted by statute, or Guidelines, but not charged in the indictment.  **United States v. Arlen**, 947 F.2d 139, 144 (5th Cir.1991).  This is petitioner's argument as well, he cannot be sentenced to a three-level enhancement that was not contained in the grand jury indictment. Petitioner's Fifth Amendment right to due process has been violated due to the Government's failure to include the enhancement in the indictment.

Considering the flaws in the Government's indictment, the district court erred in sentencing petitioner at the base offense level of 34.  Because the indictment never alleged the (3) level enhancement as required by Jones and Apprendi; his sentence should be ultimately at an offense level of 32 resulting in a sentencing guideline range of 121-151 months.

-23-

**PERTINENT FACTS:**

**A.    INEFFECTIVE ASSISTANCE OF COUNSEL**

A criminal defendant has the right to effective assistance of counsel at all stages of his trial under the Sixth Amendment of the United States Constitution.  Under the standard established by the United States Supreme Court in **Strickland v. Washington,** **466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),** a defendant has the burden of rebutting the presumption that his counsel rendered effective assistance by a preponderance of the evidence: (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defendant to such a degree that the was deprived a fair trial.  Strickland at 689. Whether the Strickland standard has been met is judged by the "totality of the representation," and is evaluated from counsel's perspective at the time of trial, not through hindsight.  Id. at 694.  **Kimmelman v. Morrison,** **477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).**

The benchmark for judging any claim of ineffective assistance must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.  Strickland, 80 L.Ed. 2d at 692-93.  Under the first prong of the Strickland test, deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms.  Id. at 693-94.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendemnt.  Id.

-24-

The representation by petitioner's counsel during his trial and sentencing stages was deficient in that he failed to investigate and present available defensive evidence to show petitioner's lack of knowledge of the whole conspiracy. Counsel failed to argue that petitioner was not involved in the conspiracy to distribute more than (5,400) pounds of marihuana; and failed to argue that the probation officer's assertion that petitioner's relevant conduct involved 8,800 pounds of marihuana without sufficient indicia of reliability by the preponderance of the evidence was similarly misplaced. Especially, where Garza's testimony/ or out-of-court statements proves that petitioner's relevant conduct was for (5,400) pounds of marihuana.

Counsel had a duty to bring to bear such skill and knowledge as would render the trial a "reliable adversarial testing process" by investigating the particular facts of the case and researching the law applicable to the case. <u>Strickland</u>, 80 L.Ed.2d at 694. If counsel had fulfilled that duty in petitioner's case, he would have been aware of the requirement that the government prove, as an element of the offense, that petitioner knew of the conspiracy to distribute more than ·5,400 pounds of marihuana; and that his relevant conduct was reasonable foreseeable.

Moreover, petitioner's counsel failed to file objections in the Addendum to the PSR. He should have objected as to the quantity of drugs alleged against petitioner were not reasonable foreseeable. Counsel should have argued and objected to the

-25-

probation officer's assertions instructing the district court to
view the probation officer's comments or testimony with caution
and scrutinize it with care in determining whether it meets the
"sufficient indicia of reliability" standard of U.S.S.G. § 6A1.3.
Further, counsel should have argued at sentencing that the three-
level enhancement was not warranted because the Government failed
to allege the enhancement in the indictment.

Once a defendant has established deficient performance by
a preponderance of the evidence, he must meet the second prong
of the Strickland test, prejudice.  A defendant must show that
there is a  "reasonable probability"  but for counsel's
unprofessional errors, the result would have been different.
Strickland, 80 L.Ed.2d at 698.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome of
the trial.  Id.  In petitioner's case, the result is unreliable
due to counsel's ineffectiveness because counsel's errors deprived
petitioner of his substantive right to be convicted only upon
proof beyond a reasonable doubt on each element of the offense.
Counsel's failure to argue and object that petitioner's relevant
conduct was not reasonable foreseeable as to the total amount of
marihuana in the conspiracy; deprived him of his liberty without
having received the substantive due process to which he was
constitutionally entitled under the Fifth Amendment.

-26-

Petitioner was prejudiced by his counsel's deficient performance because had he objected as to the total amount of marihuana reasonable foreseeable to petitioner, there is at least a "reasonable probability" that he would have been sentenced at a level 32, with a Sentencing Guideline range of 121-151 months.

Thus, it is highly unlikely that the district court, or Fifth Circuit would have affirmed the conviction and sentenced petitioner at a level 34. Because the record in this case, leaves petitioner unconvinced that the district court conducted a sufficiently individualized inquiry into the Government's evidence and into the probation officer's assertions without sufficient indicia of reliability this court must remand for resentencing.

Accordingly, this court must vacate and remand the case at bar, for the purpose to revisit the issues and clarify the record with supplemental findings to see whether counsel was ineffective for failing to argue and object as to the total amount of marihuana reasonable foreseeable. When examined in this light, it is clear that petitioner was prejudiced by counsel's misrepresentation and by the Government's failure to allege the three-level enhancement in the indictment.

**WHEREFORE, PREMISES CONSIDERED,** petitioner prays that this Honorable Court will grant his motion to vacate under 28 U.S.C. § 2255, and for any and all such other relief to which he may be entitled in law or in equity.

Respectfully Submitted

Javier Morales
ID# 73464-079
FPC-Uvalde Unit
P.O. Box 4300
Three Rivers, Texas 78071


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing petitioner's motion to vacate under 28 U.S.C. § 2255 has been forwarded on this the <u>8th</u> day of December, 2000 via certified mail with return receipt requested to the following party: Assistant United States Attorney, Eric Reed, 1036 E. Levee Street, Brownsville, Texas 78520.

Javier Morales

CVsPDF - www.texlo.com